## LEE v. NELSON

No. 4497.   Decided November 30, 1926.   (251 P. 371.)

*R. J. Hogan,* of Salt Lake City, for appellant.

*Badger, Rich & Rich,* of Salt Lake City, for respondent.

STRAUP, J.

This action was brought by Jennie C. Lee, as executrix of the estate of E. O. Lee, deceased, and as trustee for surviving partners of the law firm of which the deceased was a member long prior to and at the time of his death, against the Park Nelson Mining Company, a corporation, Wm. H. Nelson and A. C. McDonald as defendants, to quiet title to a patented mining claim fully described in the complaint, and called the Crawford Lode, situate in Elkhorn mining district, Wasatch county, Utah. She alleged that she in such capacity was, and that the deceased and his law partners were, the owners and in possession and entitled to the possession of the claim, and that the defendants asserted unfounded rights thereto and interests therein. The mining company and McDonald appeared in the action and filed a demurrer, which was overruled. Each was given time in which to file an answer, but each failed to do so, and thereupon a default of each for not answering the complaint was entered. The defendant Nelson answered, denying the allegations of ownership and right of possession contained in the complaint, and alleged that the deceased, with moneys furnished him by Nelson, purchased the claim and held it as trustee for Nelson of which the surviving partners of the law firm had knowledge, and that thus the deceased, prior to and at the time of his death, and since his death the executrix, held the claim in trust for Nelson. Nelson also filed a counterclaim to the same effect, and alleged that the plaintiff had no right, title, or interest in the claim, except as trustee for him, and prayed that the legal and equitable title be quieted in him. The plaintiff filed a reply thereto, denying all of the material allegations of the counterclaim.

On these issues the case was tried to the court, who, on findings made, found the issues in favor of the plaintiff and against the defendants, and rendered and entered judgment in favor of the plaintiff and against the defendants quieting the title in the plaintiff and in the surviving partners of the law firm. Nelson alone appeals.

The principal contention made by him is that the findings that the deceased had not purchased the claim with moneys of Nelson, and had not held the title thereto in trust for him, but purchased the claim with moneys of the law firm, and held the title thereto as part owner and in trust for the other members of his firm, are not supported by the evidence. In such respect he contends that the great weight of the evidence shows that the parties by various contracts had recognized his interest in the claim, and that it was purchased by the deceased with moneys furnished him by Nelson, and that in doing so the firm acted as his attorney, and as such purchased the claim for his use and benefit.

Nelson, the deceased, and Booth, one of the law partners, were, with others, stockholders of what is called the Nelson Queen Consolidated Mining Company. It owned the patented claim (the Crawford Lode), and also had located sixteen unpatented claims upon which it had done the assessment work, and to that extent had possessory rights thereto and was the owner of such unpatented claims. In about 1913 the company ceased to be a going concern, and was adjudged a bankrupt. An arrangement was had between Nelson and the deceased and his law partners that for the benefit of all of the stockholders, including themselves, efforts should be made to reorganize the company, raise sufficient moneys by assessment, or otherwise, on or from all of the stockholders to pay off all claims against the company, except Nelson's claim, who claimed to be the largest creditor, call in all of the outstanding stock, and issue in lieu thereof, and to satisfy Nelson's claim, stock of the new organization, and with such object in view the deceased was to purchase the claim at the trustee's sale in bankruptcy, and, providing sufficient moneys were raised by the old stockholders, to pay off and satisfy all the claims against the old company (except the claim of Nelson who had agreed to take stock in the new organization therefor), and a reorganization was effected, the deceased

was to reconvey the claim to such new or re-organization. Accordingly all of the stockholders of the old corporation were notified of such plan or scheme, and all efforts made to carry it forward, but the stockholders, except a very few of them who agreed to put up only about $122, failed and refused to contribute anything, and thus such plan or scheme failed, and was abandoned; and what few stockholders had paid in for purposes of reorganization was refunded to them. The condition thus under which the deceased was to convey the claim to a reorganization at no time existed. But at no time had the deceased or any one agreed to convey the claim to Nelson. Even Nelson's own testimony does not show that deceased had agreed to do so, or that there was any understanding that he should do so.

The assessment work on the unpatented claims when and after the company was put in bankruptcy was not done, and, not having been done, all of such claims became subject to relocation; and thereupon Nelson located them in his own name, and later conveyed them to the Park Nelson Mining Company, of which Nelson was the president. The deceased, with moneys of the law firm, and not with any moneys of Nelson, at the trustee's sale in bankruptcy, in 1914 purchased the patented claim and was given a trustee's deed therefor, which was put on record, and he and members of his firm paid all the claims against the bankrupt, except the $15,000 claim of Nelson, which was only partly paid, but which, nevertheless, in the bankruptcy proceedings was fully discharged. From thence on, and until the commencement of this action, a period of about twelve years, the deceased and his law firm paid all of the taxes on the patented claim, as well as some back taxes, and, notwithstanding Nelson then and at all times had full knowledge that the deceased had purchased the claim, yet made no claim or contention until shortly before the commencement of this action and after the death of the deceased that he had any interest in the patented claim, or that the deceased

purchased the claim with moneys furnished him by Nelson, or that he held the claim in trust for Nelson.

After the deceased had acquired the title to the patented claim at the trustee's sale, and after Nelson had located the sixteen unpatented claims, the deceased and members of his firm, as parties of the first part, and Nelson, as party of the second part, in October, 1916, entered into an agreement by the terms of which they agreed to grant a lease and option to purchase to McDonald of the patented and unpatented claims; and in pursuance thereof the deceased and Nelson as lessors, on November 1, 1916, leased to McDonald, and granted him an option to purchase, the patented and all of the unpatented claims. Not anything came of that. The terms of the lease were not performed by McDonald, nor did he exercise the option to purchase, and thus the lease and option were canceled and terminated.

In January, 1922, the Park Nelson Mining Company was organized, of which Nelson was president, and thereafter Nelson conveyed the unpatented claims to that company, and in January, 1923, Nelson, as president of the Park Nelson Mining Company, entered into negotiations with the deceased whereby the deceased, as the lessor, granted to that company a lease and option to purchase the patented claim, but the Park Nelson Mining Company did not keep or perform the terms or conditions of the lease, nor did it exercise its option to purchase, and thus in December, 1924, the deceased canceled and terminated such lease and option, and that was the end of that. But Nelson not only gave the Park Nelson Mining Company a deed conveying all of the unpatented claims, but also a deed conveying and quit-claiming to it all his right, title, and interest in and to the patented claim. Thus whatever interest, if any, was held by Nelson in and to that claim was conveyed to the Park Nelson Mining Company. But, as has been seen, that company was made a party to this action, and appeared therein and filed a demurrer to the complaint, and, on the overruling of the demurrer, was given time to answer, but failed to do so,

and permitted a default judgment to be entered against it, which has become final, and no appeal prosecuted therefrom. However, after the trustee's sale of the patented claim, Nelson had no interest in that claim, and whatever conveyance was made by him to the Park Nelson Mining Company granted no interest to it. Thus the claim made by Nelson that in virtue of these contractual relations the deceased held the patented claim in trust for Nelson is not supported by the evidence, and the finding of the trial court to that effect is, as we think, sustained by the greater weight of the evidence and by the writings themselves.

Nelson also claims that the deceased held the title to the patented claim in trust for him on the theory that the deceased purchased the claim at the trustee's sale with moneys of Nelson furnished by him to the deceased for such purpose. The evidence is decidedly against such a contention. The basis of the contention is this: The bankrupt owned an engine which was sold to another mining company for the sum of $600. The proceeds of the sale by the vendee were paid to the law firm, but who fully accounted therefor. Two hundred dollars of such proceeds were paid to Nelson for services rendered in connection therewith. The balance of the proceeds were applied to payment of claims against the bankrupt, of which Nelson received $213 on his claim. However, Nelson on the record makes the claim that the engine belonged to his brother, who had turned it over to him, and given him authority to sell it, and thus the proceeds of the sale were his moneys, which he permitted the vendee to turn over to the law firm, and in such manner does he claim that the deceased and his law firm received $600 from him, and with which the deceased purchased the patented claim at the trustee's sale. The testimony of Nelson with respect thereto is vague and uncertain, wholly uncorroborated, directly disputed by positive testimony and evidence on behalf of the plaintiff, and is in conflict with about all of the facts and circumstances attending the transaction. The findings of the trial court

in such particular against the defendant's contention undoubtedly is sustained by the greater weight of the evidence.

Nelson also claims that the deceased and his law firm, in the purchase of the patented claim, acted for and represented him. No substantial evidence was given by Nelson to support that, and most direct evidence was given to the contrary. The law firm at one time, and prior to the adjudication of the Nelson Queen Mining Company, a bankrupt, was the attorney for that company; but they were not, nor was any member of the firm, at any time the attorney for Nelson, nor did they or any of them in any capacity act for or represent him in any matter or transaction.

One of the controlling features of the case is, and as testified to by Nelson himself, that not from 1914, when the deceased purchased the patented claim at the trustee's sale, of which Nelson had full knowledge, and until the death of the deceased in 1923, a period of about eleven years, did Nelson make any claim to the deceased or to any one that the deceased had purchased the claim for the use and benefit of Nelson, nor did he make any request or demand that the deceased account to him therefor, or convey the claim to him; and during that time the deceased and his law firm paid the taxes on the claim, and exercised ownership thereof, and as late as 1923, Nelson, as the president of the Park Nelson Mining Company, in obtaining an option and lease from the deceased with respect to the patented claim, dealt with him as the sole owner thereof.

We thus are of the opinion that the finding of the court below are sustained, not only by a fair preponderance of the evidence, but by the greater weight of it, and that the judgment should be affirmed.

Such is the order. Costs to the respondent.

GIDEÓN, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.